UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:22-CR-187-RP |
| STEVE RAY SHICKLES, | § § | |
| Defendant, | § § | |

## ORDER

Before the Court is Defendant Steve Ray Shickles' ("Defendant") motion for reconsideration of this Court's order granting Movant Simple Helix LLC's ("Simple Helix") motion to quash. (Mot., Dkt. 30; Order, Dkt. 29). Simple Helix filed a response, (Dkt. 32). Having reviewed the parties' briefing, the record, and the relevant law, the Court finds that the motion should be denied.

## I. BACKGROUND

Simple Helix alleges the following facts: In late December of 2018 and early 2019, Simple Helix uncovered a scheme whereby Defendant had acquired over $13 million in funds and property from Simple Helix through fraud, deceit, and theft. (Mot. Quash, Dkt. 25, at 1–2). Upon discovering the alleged theft, Simple Helix filed an emergency petition for a temporary restraining order in Alabama state court. (*Id.*). On the eve of the hearing on the emergency petition, Defendant and his wife, Ronda Shickles, filed a voluntary petition under Chapter 11 in the U.S. Bankruptcy Court for the Northern District of Alabama. (*Id.* at 2). Defendant and his wife then entered into a settlement where Defendant agreed to a non-dischargeable judgment of $13,000,000 in favor of Simple Helix and his wife agreed to a non-dischargeable judgment of $6,500,000. (*Id.*). The bankruptcy court then appointed a liquidating trustee to liquidate all assets of the Shickles, but due to rising administrative costs with the liquidating and depreciating property, the assets' value began to rapidly erode. (*Id.*).

Simple Helix then decided to purchase the assets from the liquidating trustee to end the mounting bankruptcy costs in order to hopefully recoup its investments over time. (*Id.*). Simple Helix purchases the assets for $925,000 and then collected, stored, and sold most of the assets it had purchased. (*Id.*). Simple Helix states that it did not inventory these assets, track its costs related to their sale, or monitor whether it made a profit on the resale of the assets it had purchased from the liquidating trustee. (*Id.*).

On March 16, 2023, Defendant filed a sealed motion to serve a subpoena duces tecum on Simple Helix, requesting "records regarding the sale of assets by the victim, Simple Helix, purchased from the trustee in charge" of his bankruptcy estate. (Mot., Dkt. 21, at 1). Defendant argues that the profits, if any, Simple Helix made from the sale of these assets should be considered in his restitution calculation that will form a part of his presentence investigation report. (*Id.* at 1–2). On March 20, the Court granted the motion. (Order, Dkt. 23).

On April 14, 2023, Simple Helix filed a motion to quash the subpoena. (Mot. Quash, Dkt. 25). In its motion, Simple Helix states that the documents would be unduly burdensome because it does not possess accounting records of the assets it purchased and sold. (*Id.* at 4). Moreover, production of the records would force Simple Helix to go through an intensive accounting of its purchases and sales, which would only further add to the costs it has incurred from Shickles' allegedly wrongful conduct. (*Id.* at 5). Simple Helix also argues that Shickles has waived his right to challenge restitution in his guilty plea, rendering any financial accounting irrelevant. On May 8, 2023, the Court granted Simple Helix's motion as unopposed. (Order, Dkt. 29). Shickles then filed a motion for reconsideration, essentially responding to the arguments raised in Simple Helix's motion to quash. (Def.'s Resp., Dkt. 30).

## II. DISCUSSION

Simple Helix raises several arguments in its motion to quash. (Mot., Dkt. 25). For this motion, however, the Court will only focus on two points: (1) Simple Helix cannot be obligated to produce documents that do not exist, and (2) the information is not relevant to the case. (*Id.* at 4–6).

### A.  The Relevant Documents Do Not Exist

First, Simple Helix argues that "the requested comprehensive summaries of information do not exist, and it would be unreasonable, oppressive and beyond the scope of Federal Rule of Criminal Procedure 17(c) to require Simple Helix to create such summaries." (*Id.* at 4). The liquidating trustee did not identify the assets in great detail when it sold them to Simple Helix, and Simple Helix did not undertake an accounting of those assets once it had purchased them. (*Id.*). Rather, as Simple Helix argues, the assets were simply broken down into four categories: (1) jewelry, (2) watches, (3) real property, and (4) computer and electronics equipment. (*Id.*). No accounting of the assets existed beyond the estimated value of these four categories. (*Id.*). In sum, because no accounting records exist of the sales, Simple Helix argues that it should not be forced to create and then turn over such records.

Federal Rule of Criminal Procedure 17(c) allows a party to subpoena a witness "to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). However, while Rule 17 may compel a non-party to produce certain information it already possesses, there is no authority to order a non-party to produce evidence which does not exist. As Simple Helix argues, it would be costly and burdensome to undergo a full accounting process solely for the purpose of complying with the subpoena. (Mot. Quash, Dkt. 25, at 4). Because Simple Helix does not possess the relevant accounting records and could only create them at significant cost, it would be "unreasonable and oppressive" to force Simple Helix to produce the requested

documents. Fed. R. Crim. P. 17(c)(2) (noting that a court may quash a subpoena that is "unreasonable or oppressive").

Defendant's main response is that Simple Helix is a "sophisticated entity" that is "run by the owners of a prestigious law firm." (Mot. Reconsider, Dkt. 30, at 2). In its response to the motion for reconsideration, Simple Helix stated unambiguously, "There is no existing profit or loss statement of the kind sought by the subpoena. Even on larger-value items, such as real estate, Simple Helix has never prepared a profit and loss accounting for these items." (Movant's Resp., Dkt. 32, at 4). There is no reason to disbelieve this statement, especially as Simple Helix acquired and sold the assets with the goal of reducing administrative costs associated with the bankruptcy proceedings. The simple matter is that Simple Helix has sworn under oath that it did not create accounting records for the relevant purchases, and as such, cannot be forced to turn over what does not exist. The Court will not now force Simple Helix to create accounting records several years after the purchases, exacerbating the financial harm that the company has already incurred as the victim of Defendant's alleged crimes.

### B. Any Appreciation Would Not Affect Restitution

Second, the information sought in the subpoenas is not relevant to Defendant's restitution calculations. Defendant's core contention is that, if the value of the assets appreciated in between Simple Helix's purchase and sale of the assets, that difference should count towards his payment of restitution. Defendant relies on *Robers v. United States*, where the Supreme Court determined that restitution should be calculated at the time that "property" was "returned" to the victim. 572 U.S. 639, 646 (2014). In *Robers*, the Supreme Court determined that restitution is calculated when the victim *sold* the assets it obtained from the defendant, since the "property" at issue was the money that had been fraudulently obtained, rather than the assets themselves. *Id.* But *Robers* is distinguishable from the instant case. In *Robers*, the victim was a bank that had foreclosed on a home

owned by the defendant and therefore obtained title to the home at no significant cost. *Id.* Under 18 U.S.C. § 366(b)(1)(B), the money had been partially "returned" because the victim acquired the defendant's home for free but sold it at market value. *Id.*

Here, by contrast, the victim obtained the assets through a liquidation sale at their "fair and reasonable" market value. Under 18 U.S.C. § 366(b)(1)(B), the property was not "returned" to the victim when the victim had to purchase the property for market value as part of a liquidation sale. As Simple Helix states, "the value of property that Simple Helix acquired in the bankruptcy proceeding was what Simple Helix paid for it." (Movant's Resp., Dkt. 32, at 2). In that sale, the liquidating trustee affirmed that what Simple Helix paid was "fair and reasonable" and the "highest and best offer for the Assets." (*Id.*). Property is not voluntarily returned when the victim purchases it at the property's market value.[1] While property purchased by the victim at market value may later appreciate in value, the appreciation does not transform the victim's profit into a "return." As Simple Helix acquired the assets at market value, they were not "returned" under the meaning of 18 U.S.C. § 366, and the analysis of *Robers* is inapplicable to this case.

Because Simple Helix does not possess the relevant accounting records, and Simple Helix's secondary sale of the assets is not relevant to the amount of restitution, the Court will deny the motion for reconsideration.

---

[1] To hold the opposite would have the effect of discouraging victims, who are often creditors in a bankruptcy proceeding, from ever purchasing the liquidated assets to save them from depreciation. If any appreciation in assets will decrease the amount of restitution, then the victim will have no incentive to purchase depreciating assets. In other words, any appreciation in the assets' value will be perfectly offset by a decrease in restitution. This rule would leave the victim unable to profit and with only downside, and it would ultimately disincentive creditors from intervening to stop their assets from depreciating. To state the matter more simply, a victim's efforts to mitigate their damages should not preclude their recovery of restitution.

## III. CONCLUSION

Accordingly, for the reasons stated above, **IT IS ORDERED** that Defendant Shickles' motion for reconsideration, (Dkt. 30), is **DENIED.**

**SIGNED** on May 31, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE